# ANDREWS *v.* HOVEY.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF IOWA.

Argued October 18, 19, 1887. — Decided November 14, 1887.

Reissued letters-patent No. 4372, granted to Nelson W. Green, May 9th, 1871, for an " improvement in the method of constructing artesian wells," the original patent, No. 73,425, having been granted to said Green, as inventor, January 14th, 1868, on an application filed March 17th, 1866, are invalid, because the invention was in public use by others than Green more than two years prior to his application for the patent.

The proper construction of § 7 of the act of March 3d, 1839, (5 Stat. 354,) is, that if, more than two years before the application for a patent, the invention covered by it was in public use, whether with or without the consent of the subsequent patentee, the patent was rendered invalid.

In equity; for alleged infringement of letters-patent. Decree dismissing the bill, from which complainant appealed. The case is stated in the opinion of the court.

*Mr. Joseph C. Clayton* and *Mr Anthony Q. Keasbey* for appellants.

*Mr. Jed Lake* for appellee. *Mr. M. W. Harmon* was with him on the brief.

Mr. Justice Blatchford delivered the opinion of the court.

This is a suit in equity brought by the appellants for the infringement of reissued letters-patent No. 4372, granted to Nelson W. Green, one of the appellants, May 9, 1871, for an "improvement in the method of constructing artesian wells," the original patent, No. 73,425, having been granted to said Green, as inventor, January 14, 1868, on an application filed March 17, 1866.

This patent was before this court in the cases of *Eames* v. *Andrews* and *Beedle* v. *Bennett*, at October Term, 1886, reported in 122 U. S. 40 and 71. In those cases, this court sustained the validity of the reissued patent and affirmed the decrees of the Circuit Courts. In the present case, the decree of the Circuit Court was against the validity of the patent, and the bill was dismissed. 5 McCrary, 181. From that decree the plaintiffs have appealed.

The patent is familiarly known as the " driven well " patent. The specifications and drawings of the original and reissued patents are set forth in the opinion of this court in *Eames* v. *Andrews*. Numerous defences are set up in the answer in the present case, and voluminous proofs have been taken in respect to those defences; but it is necessary to consider only one of them, which, in our view, is fatal to the validity of the patent, and that is, that the invention was used in public, at Cortland, in the State of New York, by others than Green, more than two years before the application for the patent.

The brief of the appellants concedes that it is shown in this case that other persons than Green put the invention into public use more than two years before his application was filed. It is contended for the appellants that this was done without his knowledge, consent, or allowance. The appellee contends that such knowledge, consent, or allowance was not necessary in order to invalidate the patent, while the appellants contend that it was necessary. The whole question depends upon the proper construction of § 7 of the act of March 3, 1839, 5 Stat. 354, interpreted in connection with §§ 6, 7, and 15 of the act of July 4, 1836, 5 Stat. 119, 123.

A list of the various cases decided in the Circuit Courts, brought on the reissued "driven well" patent, is given in the case of *Eames* v. *Andrews*, at page 47. In none of those cases, except the present one and those heard at the same time with it, did the question thus presented arise. In *Andrews* v. *Carman*, 13 Blatchford, 307, 324, the question involved and considered by the court was that of a dedication and abandonment to the public of his invention by Green prior to his application, founded upon acts done by him. The conclusion of the court was, that there was no evidence of any use or sale of the invention by Green prior to his application for a patent, nor any direct proof of knowledge on his part of any use or sale of the invention by others within two years prior to his application, nor sufficient evidence from which to properly infer that he had such knowledge. The question of the use of his invention by others more than two years prior to his application does not appear to have been raised.

Nor was it raised in *Andrews* v. *Cross*, 19 Blatchford, 294. One of the defences set up in the answer in that case was "that the claim of Green as inventor was barred because the improvement was in use more than two years prior to the granting of his patent," and, as was said in the opinion in that case, there was "no allegation that the invention was in public use in the United States for more than two years before Green applied for his original patent, or that any use was with his consent or allowance, or that he abandoned the invention to the public in fact, or otherwise than inferentially from the fact alleged, that it was in use for more than two years before his original patent was granted." The conclusion of the Circuit Court in *Andrews* v. *Cross* was, that no abandonment or dedication of the invention to the public by Green was shown; and that there was no evidence of any use or sale of the invention by Green before his application, and no sufficient evidence from which to conclude that any use of any driven well by others before his application was consented to or allowed by him. The use by others thus referred to was, as in *Andrews* v. *Carman*, a use within two years prior to the application.

The point was not presented in *Eames* v. *Andrews* or in

*Beedle* v. *Bennett,* and in the opinion in the latter case, it was said (p. 77): "There is no evidence in the record of any use or sale of the invention by Green before his application for a patent, and no evidence from which to conclude that any use of any driven well by others before his application was consented to or allowed by him, except in the instances mentioned at Cortland, which were merely experimental tests, made by himself. Much less is there any evidence to show that there was any use of the invention by others for more than two years prior to his application."

The question involved has never been decided by this court. In *Egbert* v. *Lippman,* 104 U. S. 333, 334, it was said: "Since the passage of the act of 1839, it has been strenuously contended that the public use of an invention for more than two years before such application, even without his," the inventor's, "consent and allowance, renders the letters-patent therefor void. It is unnecessary in this case to decide this question, for the alleged use of the invention covered by the letters-patent to Barnes is conceded to have been with his express consent." In that case, the Circuit Court had, in *Egbert* v. *Lippman,* 15 Blatchford, 295, held that the effect of the act of 1839 was to require that the inventor should not permit his invention to be used in public at a period earlier than two years prior to his application for a patent, under the penalty of having his patent rendered void by such use; and that consent and allowance by the inventor were not necessary to such invalidity. The Circuit Court said, that the policy introduced by the act of 1839, and continued by §§ 24 and 61 of the act of July 8th, 1870, 16 Stat. 201, 208, now §§ 4886 and 4920 of the Revised Statutes, was, "that the inventor must apply for his patent within two years after his invention is in such a condition that he can apply for a patent for it, and that, if he does not apply within such time, but applies after the expiration of such time and obtains a patent, and it appears that his invention was in public use at a time more than two years earlier than the date of his application, his patent will be void, even though such public use was without his knowledge, consent, or allowance, and even though he was

in fact the original and first inventor of the thing patented and so in public use." The Circuit Court, in that case, appears to have decided the question on the view that the defence set up in the answer was that the invention had been known and in use in the United States more than two years before the application, and that there was no issue as to whether the public use for more than two years was with the consent or allowance of the patentee; but this court decided. the case on the question of the consent of the patentee to the use for more than two years before the application.

The original patent in the present case having been applied for and issued prior to the passage of the act of 1870, is to be governed by the provisions of the acts of 1836 and 1839. Section 6 of the act of 1836 provided for the issuing of a patent to an inventor for an invention not known or used by others before his discovery or invention thereof, "and not, at the time of his application for a patent, in public use or on sale, with his consent or allowance, as the inventor or discoverer." Section 7 of the same act provided for the issuing of a patent if, on examination, it should not appear to the Commissioner that the invention had been made by any other person in this country prior to its being made by the applicant, or that it had been patented or described in any printed publication in this or any foreign country, "or had been in public use or on sale with the applicant's consent or allowance prior to the application." Section 15 of the same act provided that the defendant, in an action for the infringement of a patent, might show, among other things, that the thing patented "had been in public use, or on sale, with the consent and allowance of the patentee, before his application for a patent;" and that, if that was shown, judgment should be rendered for the defendant.

The seventh section of the act of 1839 was in these words: "That every person or corporation who has, or shall have, purchased or constructed any newly invented machine, manufacture, or composition of matter, prior to the application of the inventor or discoverer for a patent, shall be held to possess the right to use, and vend to others to be used, the specific

machine, manufacture, or composition of matter so made or purchased, without liability therefor to the inventor, or any other person interested in said invention; and no patent shall be held to be invalid by reason of such purchase, sale, or use prior to the application for a patent as aforesaid, except on proof of abandonment of such invention to the public; or that such purchase, sale, or prior use has been for more than two years prior to such application for a patent."

The act of July 8, 1870, repealed the act of 1839, but provided, § 111, that such repeal should not affect, impair, or take away any right existing under the act of 1839. Section 24 of the act of 1870, now embodied in § 4886 of the Revised Statutes, was in these words: "That any person who has invented or discovered any new and useful art, machine, manufacture, or composition of matter or any new and useful improvement thereof, not known or used by others in this country, and not patented, or described in any printed publication in this or any foreign country, before his invention or discovery thereof, and not in public use or on sale for more than two years prior to his application, unless the same is proved to have been abandoned, may, upon payment of the duty required by law, and other due proceedings had, obtain a patent therefor."

Section 37 of the act of 1870, now embodied in § 4899 of the Revised Statutes, provided as follows: "That every person who may have purchased of the inventor, or with his knowledge and consent may have constructed any newly invented or discovered machine, or other patentable article, prior to the application by the inventor or discoverer for a patent, or sold or used one so constructed, shall have the right to use, and vend to others to be used, the specific thing so made or purchased, without liability therefor."

In § 61 of the act of 1870 it was enacted, that, in any action for infringement, the defendant might prove on the trial, as a defence, among other things, that the thing patented "had been in public use, or on sale in this country, for more than two years before his application for a patent, or had been abandoned to the public," and that, if such special matter

alleged should be found for the defendant, judgment should be rendered for him. This provision is now found in § 4920 of the Revised Statutes.

It is very plain, that, under the act of 1836, if the thing patented had been in public use or on sale with the consent or allowance of the applicant for any time, however short, prior to his application, the patent issued to him was invalid. Then came § 7 of the act of 1839, which was intended as an amelioration in favor of the inventor, in this respect, of the strict provisions of the act of 1836. The first clause of that section provides for the protection of a person who, prior to the application for the patent, purchases or constructs a specific machine or article, and declares that he may use and sell such specific machine or article after the patent is issued, without liability to the patentee. The section does not require, in order to this protection, that the purchase or construction shall have been with the consent or allowance of the person who afterwards obtains the patent and seeks to enforce it against such purchaser or constructor. The words "consent or allowance" are not found in the provision. The only requirement is, that the specific machine or article shall have been purchased or constructed at some time prior to the application for a patent. The second clause of the section then passes to consider the effect upon the validity of the patent "of such purchase, sale, or use prior to the application" for the patent, and declares that "no patent shall be held to be invalid by reason of such purchase, sale, or use prior to the application for a patent as aforesaid, except on proof of abandonment of such invention to the public, or that such purchase, sale, or prior use has been for more than two years prior to such application for a patent." The expression "such purchase" clearly means the purchase from any person, and not merely from the person who becomes the patentee of the machine or article. The expression "such sale or use" clearly refers to the use or sale by the person who has purchased or constructed the machine or article, the right to use and sell which is given to him by the first part of the section. That right is given to a person who has constructed the machine or

article, as well as to one who has purchased it; and the plain declaration of the second part of the section is, that, where the purchase or construction of the machine or article took place more than two years prior to the application for the patent, or where the use or sale by the person who so purchased or constructed the machine or article took place at a time more than two years prior to the application, the patent becomes invalid. It is not possible in any other way to give full effect to the word " constructed," in the first part of the section. The word " purchased " and the word " constructed " are used in the same connection, and in connection with the words " so made or purchased," which occur afterwards; and the word " purchased " cannot be limited to a purchase from the applicant for the patent, nor can the word " constructed " be limited to a construction with the consent and allowance of such applicant, without interpolating into the statute the words " consent or allowance." We can find no warrant for doing this. The evident purpose of the section was to fix a period of limitation which should be certain, and require only a calculation of time, and should not depend upon the uncertain question of whether the applicant had consented to or allowed the sale or use. Its object was to require the inventor to see to it that he filed his application within two years from the completion of his invention, so as to cut off all question of the defeat of his patent by a use or sale of it by others more than two years prior to his application, and thus leave open only the question of priority of invention. The evident intention of Congress was to take away the right (which existed under the act of 1836) to obtain a patent after an invention had for a long period of time been in public use without the consent or allowance of the inventor; it limited that period to two years, whether the inventor had or had not consented to or allowed the public use. The right of an inventor to obtain a patent was in this respect narrowed, and the rights of the public as against him were enlarged, by the act of 1839. The language of § 24 of the act of 1870, now § 4886 of the Revised Statutes, is to the same effect, and carries out the policy inaugurated by the act of 1839. It

allows a patent to be granted only for an invention which was not in public use or on sale for more than two years prior to the application for the patent, subject to the defence of abandonment within such two years, which is also the requirement of § 61 of the same act; while § 37 of that act requires that a person, in order to have the right to use and sell, without liability, a specific thing made or purchased prior to the application for the patent, shall have purchased it of the inventor or constructed it with his knowledge and consent.

In view of the fact that § 37 of the act of 1870 reënacts the first part of § 7 of the act of 1839, with the addition, *ex industria*, of the requirement, in order to confer the right to use the specific thing in question, that the purchase of it should have been from the inventor or the construction of it should have been with his knowledge and consent, and of the further fact that § 24 of the act of 1870 reënacts the second part of § 7 of the act of 1839, and does not contain a requirement that the public use or sale for more than two years prior to the application shall have been with the consent or allowance of the patentee, in order to invalidate the patent, it may fairly be said, that it was the view of Congress, that § 7 of the act of 1839 did not require, as an element, the knowledge, consent or allowance of the applicant.

Views are to be found in decisions of Circuit Courts, not in harmony with the construction we have thus put upon § 7 of the act of 1839. That construction was upheld in the very full opinion given by Judge Love, one of the judges who sat in the present case in the Circuit Court. 5 McCrary, 204. It was indicated as the proper construction in the opinion of this court in *Elizabeth* v. *Pavement Co.,* 97 U. S. 126, 134, which was the case of a patent issued under the act of 1839, and where this court, speaking by Mr. Justice Bradley, said, in regard to that act: "An abandonment of an invention to the public may be evinced by the conduct of the inventor at any time, even within the two years named in the law. The effect of the law is, that no such consequence will necessarily follow from the invention being in public use or on sale, with the in-

ventor's consent and allowance, at any time within two years
before his application; but that, if the invention is in public
use or on sale prior to that time, it will be conclusive evidence
of abandonment, and the patent will be void."

The decree of the Circuit Court is

*Affirmed.*